IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RUSSELL SWEARINGIN                                          PLAINTIFF

VS.                              CIVIL NO. 04-2244

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION               DEFENDANT

## MEMORANDUM OPINION

Russell Swearingin (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the

Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of

the Commissioner of the Social Security Administration denying his applications for disability

insurance benefits ("DIB"), and supplemental security income benefits ("SSI"), under Titles II and

XVI of the Act.

## Background:

The applications for DIB and SSI now before this court were filed on August 28, 2002,

alleging an onset date of August 6, 2002, due to chronic back pain status post lumbar fusion, the

residuals of carpal tunnel surgery on the right hand, polycythemia vera ("PV"),[1] a somatoform

disorder, hypertension, irritable bowel syndrome, panic disorder, depression, and anxiety. (Tr. 14,

16, 160-163, 418-422). An initial administrative hearing was held on May 22, 2003, resulting in an

---

[1]PV is an acquired disorder of the bone marrow that causes the overproduction of all
three blood cell lines: white blood cells, red blood cells, and platelets. *See* Emmanuel C. Besa,
*Polycythemia vera*, *at* www.emedicine.com. The disease usually develops slowly, and most
patients do not experience any problems related to the disease after being diagnosed. *Id.*
However, the abnormal bone marrow cells may begin to grow uncontrollably in some patients
leading to acute myelogenous leukemia. Patients with polycythemia vera also have an
increased tendency to form blood clots that can result in strokes or heart attacks. *Id.* Some
patients may also experience abnormal bleeding because their platelets are abnormal.

unfavorable decision. (Tr. 30-68). Plaintiff then appealed the decision to the Appeals Council, and the Council vacated that ALJ's decision and remanded the case for further proceedings. (Tr. 146-148). A second hearing was held on April 5, 2004. (Tr. 69-103). Plaintiff was present and represented by counsel.

At the time of the second administrative hearing on April 5, 2004, plaintiff was forty-four years old and possessed the equivalent of a high school education. (Tr. 15). The record reveals that he had past relevant work ("PRW"), as a sales representative, porter at an automobile dealership, store manager, retail sales person, and delivery driver. (Tr. 15, 118-125, 296).

On June 24, 2004, the Administrative Law Judge ("ALJ"), found that plaintiff had severe impairments, but that those impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 108-120, 460-472). After discrediting plaintiff's subjective allegations, the ALJ concluded that he maintained the residual functional capacity ("RFC"), to perform a wide range of light work, limited by an ability to perform occasional overhead work; occasional stooping, crouching, kneeling, and crawling; and, frequent fingering with his right hand. Further, the ALJ determined that plaintiff should not work near ropes, ladders, or scaffolds, and was limited to only incidental contact with the general public and co-workers. (Tr. 24). With the assistance of a vocational expert ("VE"), he determined that plaintiff could not perform his PRW. (Tr. 24). However, the VE testified that plaintiff could make a vocational adjustment to perform work as an assembler and machine tender. (Tr. 25).

On October 15, 2004, the Appeals Council declined to review this decision. (Tr. 5-8).

2

Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Although both parties were afforded the opportunity to file appeal briefs, plaintiff has chosen not to do so. (Doc. # 10). The case is now ready for decision.

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevent him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines

3

"physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's failure to properly consider the RFC assessments prepared by Drs. Patricia Walz, Allen Beachy, and Robert Thompson.  Rather than to analyze the opinions of these treating/examining doctors, the ALJ chose to dismiss their opinions, simply stating that they were not "entirely supported by the medical evidence of record."  (Tr. 21). *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating

4

physician's opinion is generally entitled to substantial weight). He did not, however, explain how their opinions were in conflict with the medical evidence. *See* 20 C.F.R § 404.1527(d)(2); SSR 96-2p; *Prosch v. Apfel,* 201 F.3d at 1010, 1012-13 (8th Cir. 2000) (holding that the ALJ must "always give good reasons" for the particular weight given to a treating physician's evaluation). Further, he opted to adopt the RFC assessment of a non-treating, non-examining physician, over those of examining and/or treating physicians. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence).

The RFC assessments prepared by the aforementioned doctors reveals the following pertinent information. On March 18, 2003, plaintiff was evaluated by Dr. Patricia J. Walz. (Tr. 379-385). Plaintiff reported that he had not worked for eight months. (Tr. 380). He told Dr. Walz that he had been treated by Dr. Beachy for anxiety and depression, but that he had tried eight different types of medication, none of which worked. Following a general mental status examination, it was determined that plaintiff's I. Q. fell within the low average range. (Tr. 382). On the Beck Anxiety Inventory, he earned a score of forty-five, which fell within in the severely anxious range. Further, his MMPI-2 appeared to have some elements of exaggeration of symptoms, though not severe. Dr. Walz indicated that this could probably be interpreted to correlate with a diagnosis of somatoform disorder and/or depression. Although she concluded that plaintiff was abusing alcohol and possibly prescription drugs to manage his pain and psychiatric illness, she did not believe that his addiction problem was the primary issue. Instead, she was of the opinion that he was self-medicating, and

lacked the intellectual and personality resources to deal with his chronic pain. In addition, Dr. Walz determined that plaintiff's level of anxiety was severe enough to impair his ability to interact appropriately with peers and supervisors, as well as his ability to attend work regularly. (Tr. 383). She also found that he had a poor ability to perform activities within a schedule, maintain regular attendance and be punctual; complete a normal workday or workweek; and, accept instructions and respond appropriately to criticism from supervisors. (Tr. 384-385). Further, Dr. Walz concluded that plaintiff had only a fair ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work with or near others without being distracted by them; make simple work-related decisions; perform at a consistent pace; interact appropriately with the general public; get along with co-workers and peers; maintain socially appropriate behavior; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and, set realistic goals or make plans independently of others. (Tr. 384-385).

On May 20, 2003, Dr. Beachy, plaintiff's treating physician, completed an attending physician's statement, indicating that plaintiff was suffering from degenerative disc disease, due to failed back syndrome status post-laminectomy; polycythemia; hypertension; major depression with features of anxiety; and, chronic alcoholism. (Tr. 388). His treatment was said to include possible lumbar epidural steroid injections, periodic phlebotomies, antidepressant/anxiolytic medications, and antihypertensive medication. Dr. Beachy characterized plaintiff's condition as moderate, meaning

6

that some physical activity could be tolerated, but the condition would cause a marked handicap in the performance of the activity. Emotional factors were also said to contribute to his symptoms, with his symptoms being severe enough to interfere with his ability to concentrate and tolerate work stress. Dr. Beachy indicated that plaintiff would require unscheduled breaks during an eight-hour workday, and would likely miss more than four days of work per month, due to his impairments. (Tr. 389). He was of the opinion that plaintiff was disabled from work activity. (Tr. 389).

On February 9, 2004, Dr. Walz completed a second psychiatric evaluation of plaintiff. (Tr. 407-411). This time, she administered the WAIS II intelligence exam, which revealed that plaintiff's I. Q. was actually within the borderline range intellectual functioning. (Tr. 410). Based on this, she concluded that he could probably manage a simple budget. Interpersonally, Dr. Walz found that plaintiff demonstrated a somatic focus with underlying depression, accompanied by possible psychotic symptoms. As such, she was of the opinion that he qualified for a diagnosis of somatoform pain disorder. Dr. Walz stated that this diagnosis would affect plaintiff's ability to work, in terms of his ability to attend regularly, interact appropriately with peers, and concentrate. Further, she indicated that his prognosis was poor without intervention, and guarded to poor with treatment, based on his I. Q., somatization, and limited coping skills. (Tr. 410). She then diagnosed him with somatoform pain disorder, alcohol abuse in remission for three months, intermittent benzodiazepine abuse, and borderline intellectual functioning. (Tr. 411). Based on these diagnoses, Dr. Walz determined that plaintiff had a poor ability to deal with the public; understand, remember, and carry out complex job instructions; and, demonstrate reliability. (Tr. 412-413). Further, she concluded

AO72A
(Rev. 8/82)

that his ability to follow work rules; relate to co-workers; use judgment; interact with supervisors; deal with work stresses; function independently; maintain concentration; understand, remember, and carry out detailed job instructions; understand, remember, and carry out simple job instructions; maintain personal appearance; behave in an emotionally stable manner; and, relate predictably in social situations was only fair. (Tr. 412-413).

On February 10, 2004, Dr. Robert Thompson, an orthopaedist, evaluated plaintiff. (Tr. 414). Plaintiff indicated that he had worked as a mechanic until 2001, at which point his back pain intensified and, when combined with the onset of two unsuccessful inguinal hernia repairs, resulted in weakness of the abdominal musculature and severe pain. On examination, Dr. Thompson noted some decreased sensation in the left hand in the ulnar distribution compared to the right, slight decreased sensation over the lateral aspect of the left calf, and slight weakness of dorsiflexion to the left ankle compared to the right. Plaintiff was also noted to have a guarded gait, with limited flexion, extension, and lateral flexion of the lumbar spine. (Tr. 416). Based on these findings, Dr. Thompson concluded that plaintiff could frequently lift up to ten pounds, rarely lift eleven to twenty pounds, and never lift more than twenty pounds. (Tr. 417). He indicated that plaintiff could sit for three hours during an eight-hour workday, and stand one to two hours per day. In addition, it was Dr. Thompson's opinion that plaintiff could never climb, balance, stoop, crouch, kneel, or crawl, and should avoid all exposure to heights and moving machinery. (Tr. 417).

In spite of this evidence, however, the ALJ concluded that plaintiff could lift ten pounds frequently and twenty pounds occasionally; stand and walk for six hours during an eight-hour

8

workday; occasionally stoop, crouch, kneel, and crawl; occasionally perform overhead work; frequently finger with his right hand; never work around ropes, scaffolds, and ladders; and, perform work involving only incidental contact with the general public and co-workers. (Tr. 22). Therefore, based on the medical evidence of record, the undersigned concludes that remand is necessary to allow the ALJ to properly consider the opinions of these physicians. Recognizing that Dr. Beachy's opinion does not contain specifics regarding plaintiff's limitations, on remand, the ALJ is directed to address interrogatories to him, asking him to review plaintiff's medical records; to complete a mental and physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

Further, on remand, should the ALJ again choose to disregard the opinions of these physicians, he is directed to provide "good reasons" for his decision. *See* 20 C.F.R § 404.1527(d)(2); SSR 96-2p; *Prosch,* 201 F.3d at 1012-13 (8th Cir. 2000). In other words, he is to provide a detailed explanation of his reasons for dismissing this evidence, including a description of how this evidence is contradicted by the record as a whole.

We also note that the ALJ failed to include the fact that plaintiff suffers from borderline intellectual functioning in his hypothetical questions to the vocational expert. The United States Court of Appeals for the Eighth Circuit has "previously concluded that borderline intellectual

9

functioning . . . is a significant nonexertional impairment that must be considered by a vocational expert." *Lucy v. Chater,* 113 F.3d 905, 908 (8th Cir. 1997); *Foreman v. Callahan*, 122 F.3d 24, 26 (8th Cir. 1997). Accordingly, on remand, the ALJ is directed to recall the vocational expert, and to pose a hypothetical question to the expert that includes the specific mental limitations imposed by plaintiff's borderline intellectual functioning.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this <u>15th</u> day of November 2005.

<u>/s/ Bobby E. Shepherd</u>
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)